UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SEARCY,

            Plaintiff,

v.                                                                  Case Number 09-13007
                                                                    Honorable David M. Lawson
COUNTY OF OAKLAND, MICHAEL J.
BOUCHARD, CITY OF PONTIAC, JOHN
DOE 1-2,

            Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT, DISMISSING CERTAIN COUNTS, REQUIRING ANSWERS TO THE COMPLAINT, AND SETTING SCHEDULING CONFERENCE

The defendants have raised several issues in their motions to dismiss this civil rights case presently pending before the Court. The main issue relating to the timeliness of the complaint — and whether the plaintiff has avoided the statute of limitations bar — presents the following question: Is an action "commenced" under Federal Rule of Civil Procedure 3 when a complaint is submitted electronically through the Court's Case Management/Electronic Case Filing (CM/ECF) system, even though the filing fee is not paid at that time? Pre-CM/ECF Sixth Circuit precedent suggests a negative answer to that question. However, under current practice and the Court's CM/ECF Policies and Procedures, the Court determines that a complaint is "filed" when it is lodged electronically with the Clerk. The non-payment of the fee may subject the complaint to later dismissal, but it does not upset its status as "filed" under Rule 3. Despite this determination, some of the counts in the complaint are untimely, and the plaintiff has made no effort to identify and name

certain "John Doe" defendants. Consequently, for the reasons set out in detail below, the Court will grant in part and deny in part the defendants' motions to dismiss.

I.

The plaintiff contends that he was falsely arrested, the officers who arrested him used excessive force, and he was detained without the opportunity to post bond. His complaint alleges various constitutional violations via 42 U.S.C. § 1983 and several state law causes of action against two municipal defendants and three police officers, two of whom are identified by John Doe pseudonyms.

According to the complaint's allegations, which the defendants do not contest for the purpose of their motions, on July 13, 2006, plaintiff John Searcy received a letter from "M.I.B." inviting him participate in research concerning some new vehicles and offering an opportunity to win a new car. The letter instructed the plaintiff to go to 409 North Telegraph Road in Pontiac, Michigan on July 29, 2006. The plaintiff alleges that this letter was actually part of a sting operation set up by the City of Pontiac police department and the Oakland County Sheriff's Department to apprehend fugitives with outstanding warrants.

When the plaintiff arrived at 409 North Telegraph Road, he was asked to present the letter he received and a form of identification. Two or three unidentified individuals began showing the plaintiff the vehicles. When they reached the final vehicle, one individual allegedly said "Nothing in this life is free" and the officers escorted the plaintiff to the back of the building. There, he was greeted by two plain-clothes police officers and handcuffed. The plaintiff was not told that he was under arrest, but he did not resist the officers' actions. Nonetheless, he contends that the officers threw him against a wall and injured his head, right shoulder, and back. He alleges that he was

denied medical treatment when he requested it.  At some point later, the plaintiff was told that he was being arrested for an outstanding warrant.  When he denied that he had any warrants, an officer allegedly told him to "shut up."

The plaintiff was transported to the Pontiac Police Department.  The officers allegedly refused to release him on bond when his family arrived with the necessary bond money.  The plaintiff says he informed a deputy that he would be fired if he did not appear for work.  His pleas fell on deaf ears, and he was detained in jail over the weekend and was not brought to court until the following Monday, August 1, 2006.  On that date, the plaintiff was returned to the jail and released without being brought before a judge and without any charges brought against him.  The plaintiff alleges that he was forced to sign papers releasing the police department and the City of Pontiac from liability and states that signing these papers was a condition of his release.

On July 29, 2009, three years to the day after the arrest, the plaintiff's attorney submitted his complaint for filing to this Court via the CM/ECF electronic filing system.  The complaint names as defendants Oakland County, Sheriff Michael J. Bouchard, and a John Doe Deputy Sheriff from Oakland County (the Oakland County defendants); and the City of Pontiac and a John Doe police officer from the Pontiac police department (the Pontiac defendants).  The complaint includes counts for gross negligence, intentional infliction of emotional distress, false arrest, false imprisonment, assault and battery, and three counts under 42 U.S.C. § 1983 for violating the plaintiff's Fourth and Eighth Amendment rights.

Plaintiff's counsel did not pay the filing fee at the time the complaint was submitted electronically.  The Clerk of Court issued a Notice of Filing Fee Not Paid on July 30, 2009, which directed the plaintiff to pay the filing fee "within seven calendar days," i.e., by August 6, 2009, or

face dismissal. Inexplicably, the plaintiff did not pay the filing fee until August 12, 2009. The Clerk then issued summonses for the named defendants on August 13, 2009. The record does not indicate when these defendants were served, but the defendants assert (and the plaintiff admits) that they were not served with the summons and complaint until December 9, 2009.

Plaintiff's counsel also has asserted that she became ill on October 14, 2009, but did not seek medical attention until October 21, 2009. She was diagnosed with the H1N1 influenza virus and suffered complications with her diabetes as a result. She says she took a medical leave from work until November 9, 2009 under doctor's orders.

On December 22 and 29, 2009, the defendants filed dispositive motions. The plaintiff did not respond to these motions within the deadlines established by the local rules. The Court scheduled a hearing on these motions for May 3, 2010. Five days before the hearing — and four months after the dismissal motions were filed — the plaintiff's attorney filed an emergency motion for an extension of time to file responses to the dispositive motions. The Court heard oral argument on this motion on May 3, 2010. Plaintiff's counsel explained that her office had been burglarized in November 2009 and her office computer was stolen. She said she lost her records of pending cases and her calendar deadlines. Despite the fact that the defendants filed their motions *after* the computer theft, the Court granted the plaintiff's motion due to other non-case-related difficulties encountered by the plaintiff's attorney and permitted the plaintiff to file responses by May 10, 2010. Remarkably, the plaintiff filed responsive briefs — without explanation — one day late, on May 11, 2010.

II.

The Oakland County defendants filed a motion to dismiss. The Pontiac defendants styled their motion as one for summary judgment; however, they reference only the complaint and have not attached materials beyond the pleadings, so the Court will treat both motions under Rule 12. All the defendants argue that the plaintiff's claims are barred by the three-year statute of limitations. The Pontiac defendants seem to argue that a two-year limitations period applies, which may be true for the state law claims but is incorrect as to the federal claims, as explained below. The defendants acknowledge that the complaint was submitted to the Court on the last possible day, but they insist that the complaint cannot be considered "filed" until the filing fee is paid. Since the filing fee was not paid within the three-year period, they reason, the statute of limitations bars the plaintiff's claims. The defendants also contend that they were not served with the summons and complaint until December 9, 2009, which was 133 days after the complaint was submitted to court, 119 days after the filing fee was paid, and 118 days after the summons was issued by the clerk. They contend that defect requires dismissal. The Pontiac defendants argue that the John Doe defendants were never identified or served and therefore should be dismissed from the case, since the plaintiff has had a generous amount of time to investigate and learn their identities. Finally, the Pontiac defendants allege that the John Doe defendants are necessary parties to the case, and the case cannot proceed against the municipalities after they are dismissed.

A. Statute of limitations

"A motion to dismiss based on the expiration of the statute of limitations is analyzed under [Federal] Rule [of Civil Procedure] 12(b)(6)." *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 501 (E.D. Va. 2002). Rule 12(b)(6) authorizes federal courts to dismiss a pleading for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion under this Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted 'when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief.'" *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)); *see also Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945) (stating that "[t]he defense of the statute of limitations is covered by [Rule 12(b)](6), and therefore is properly raised by motion"). "What that means in the statute of limitations context is that dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. New York*, 186 F.3d 243, 250 (2d Cir. 1999).

"Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003) (citing *Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487-88 (1980)). To avoid a statute of limitations bar, a plaintiff must commence his action within a prescribed time frame measured from the date the claim accrues. *See Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001). A statute of limitations claim therefore has three variables: the date the claim accrues; the date the action is commenced; and the permissible period of delay between those two events. All three components are in dispute in this case.

The sequence of events in this case is summarized as follows:

July 29, 2006 – Plaintiff is arrested
August 1, 2006 – Plaintiff is released from custody
July 29, 2009 – Complaint submitted to court through CM/ECF system
July 30, 2009 – Notice issued to pay filing fee "within seven calendar days" (i.e. by August 6)
August 12, 2009 – filing fee paid
August 13, 2009 – Summonses issued
October 14, 2009 – Plaintiff's counsel became ill
October 21, 2009 – Plaintiff's counsel sought medical treatment and took leave from work
November 9, 2009 – Plaintiff's counsel returned to work
November 13, 2009 – Burglary discovered at plaintiff's counsel's office (suggesting that break-in happened on the night of November 12, 2009)
December 9, 2009 – Defendants served
December 22 & 29, 2009 – Motions to dismiss filed

### 1. Accrual date

The defendants argue that the plaintiff's claim accrued when he was arrested on July 29, 2006. The plaintiff contends that his claim did not accrue until he was released from custody on August 1, 2006. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In *Wallace*, the plaintiff brought an action under 42 U.S.C. § 1983 for false arrest, filing the case after the underlying criminal action terminated. The Supreme Court reiterated "'the standard rule that [accrual occurs] when the plaintiff has "a complete and present cause of action."'" *Id.* at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Applying that rule, the Court concluded that the plaintiff's false arrest claim accrued "as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention." *Ibid.* The Court also determined that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* at 389 (quotation marks and citations omitted). Because the plaintiff's claim under section 1983 was "[r]eflective of the fact that false imprisonment consists

of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges." *Ibid.* The plaintiff's claim for false imprisonment under section 1983 accrues, then, when the plaintiff is brought before a judicial officer or when he is released, whichever is earlier.

Based on this authority, it appears that the plaintiff's claim for false arrest and excessive force accrued on the date of the arrest, that is, July 29, 2006. The claim for unlawful detention without bond accrued when the plaintiff was released on August 1, 2006, since he never was taken before a judicial officer.

## 2. Period of limitations

To determine the length of the period of limitations, "federal law looks to the law of the State in which the cause of action arose." *Id.* at 387. The Pontiac defendants argue that a two-year limitations period applies to the plaintiff's 1983-based false arrest and unlawful detention claims, presumably because there are analogous state law causes of action that carry two-year statutes of limitations. However, it is well settled that the statute of limitations for claims filed in Michigan based on 42 U.S.C. § 1983 is three years. *McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir. 1988). In *McCune*, the court of appeals explained that "the appropriate statute of limitations to be applied in *all* section 1983 actions is the state statute of limitations governing actions for personal injury. . . . Michigan's three year statute of limitations for personal injury claims, Mich. Comp. Laws Ann. § 600.5805(8) (West 1987), governs section 1983 actions when the cause of action arises in Michigan." *Id.* at 905 (emphasis added).

However, the complaint in this case alleges causes of action under state law as well. Under Michigan law, the statute of limitations for assault and battery, false imprisonment, and false arrest

is two years, Mich. Comp. Laws § 600.5805(2); *Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.5805(2) as the statute of limitations for false arrest claims); gross negligence is three years, Mich. Comp. Laws § 600.5805(10); *see also Bestway Recycling, Inc. v. Bean*, No. 239440, 2003 WL 21186596, at *1 (Mich. App. May 20, 2003); and "all other actions to recover damages . . . for injury to a person," including intentional infliction of emotional distress, have three-year statutes of limitations, *id.* § 600.5805(10); *Nelson v. Ho*, 222 Mich. App. 74, 85 & n.6, 564 N.W.2d 482, 487 & n.2 (1997) (noting that the Michigan Supreme Court has not formally recognized this tort, but the Michigan Court of Appeals has and applies a three-year statute of limitations).

### 3. Lawsuit commencement date

"A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. The defendants contend that the additional act of paying a filing fee is required before a "filing" occurs. This argument does not find support in the text of the rules of procedure or the statutes. Rule 5(d)(2)(A) states that "[a] paper is filed by delivering it . . . to the clerk" and subsection (d)(4) prohibits the clerk from "refus[ing] to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Fed. R. Civ. P. 5. Under 28 U.S.C. § 1914(a), the clerk is entitled to collect a filing fee when a complaint is submitted, but the statute does not speak to the status of complaint presented without a fee. The statutory language actually implies that payment of a fee is not a mandatory prerequisite to "filing" a complaint; instead, the matter is left to local practice. *See* 28 U.S.C. § 1914(c) ("Each district court by rule or standing order *may* require advance payment of fees." (emphasis added)). Nonetheless, courts have held that presenting a complaint without a filing fee does not constitute "filing" sufficient to stop a statute of limitations

from expiring.  *E.g. Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256 (10th Cir. 1994).  There is no consensus on either view.  One commentator has stated:

> Filing a complaint requires nothing more than delivery of the document to a court officer authorized to receive it; the actual establishment of personal jurisdiction over the defendant, by service of process or other means, is not essential to the commencement of the action. . . . [However,] [i]n some cases the paying of filing fees may be a requirement to filing a complaint.

4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1052 (3d ed.) (footnotes omitted).  The weight of authority favors the view that presentment to the clerk constitutes "filing" irrespective of when the filing fee is paid.  *See, e.g.*, *Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 707 (7th Cir. 2007) (holding that a "brief delay in payment is not a fatal misstep" that prevents a court from accepting an otherwise properly filed complaint and noting that the complaint must be accepted if it satisfies the statute of limitations, even if the filing fee is not paid); *Rodgers ex rel. Jones v. Bowen*, 790 F.2d 1550, 1551-52 (11th Cir. 1986) ("This circuit and others have long recognized that local rules should not be elevated to the status of jurisdictional requirements. . . . [W]e expressly rejected the theory that timely payment of a filing fee is a jurisdictional requirement . . . . [A] complaint is 'filed' for statute of limitations purposes when it is 'in the actual or constructive possession of the clerk,' regardless of the untimely payment of the required filing fee." (internal citations omitted)); *Johnson v. Brown*, 803 F. Supp. 1414, 1417-18 (N.D. Ind. 1992) (determining that the plaintiff's complaint, following a Title VII right-to-sue letter, should be deemed filed on the date his *in forma pauperis* application was denied even though the plaintiff had failed to pay the filing fee); *cf. In re Bade*, 87 B.R. 78, 79 (Bankr. D. Neb. 1988) ("Payment of the filing fee is not jurisdictional; the critical date, is the date upon which the pleading was initially filed with the Court.").

The defendants' argument that the lawsuit was not commenced until the filing fee was paid is based on language found in *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998), a case originating in this district. The plaintiff presented to the Clerk of Court her complaint against her former employer under Title VII of the Civil Rights Act within 90 days of receiving her right-to-sue letter, together with a pauper affidavit. The pauper petition was denied, but the plaintiff did not pay her filing fee until five months later, well after the 90-day time limit expired. The Clerk formally filed the complaint when the fee was paid. The court of appeals affirmed the dismissal of the case on statute of limitations grounds, holding "that it is proper for a district court to deem a complaint 'filed' only when IFP [*in forma pauperis*] status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court." *Id.* at 648.

At first blush, it appears that *Truitt* should govern this case and require dismissal of the complaint as untimely, but there are several reasons why it does not. First, as noted earlier, the decision runs against the grain of the text of Rule 5(d)(4) ("The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."). The better-reasoned view, the Court believes, is expressed by the Seventh Circuit in *Farzana K. v. Indiana Department of Education*:

> By refusing to accept complaints (or notices of appeal) for filing, clerks may prevent litigants from satisfying time limits. To prevent this — to ensure that judges rather than administrative staff decide whether a document is adequate — Fed. R. Civ. P. 5(e) was amended in 1993 to require clerks to accept documents tendered for filing. . . .
> . . .
>
> That raises the question what happens (for limitations purposes) if a complaint is lodged with the clerk on time, but the fee is not paid until after the period of limitations has expired. We held in *Robinson v. Doe*, 272 F.3d 921 (7th Cir. 2001), relying in part on Rule 5(e), that a complaint must be accepted and filed even if neither the fee nor an application to proceed *in forma pauperis* is enclosed, and that

> the complaint alone satisfies the statute of limitations. . . . If the fee is not paid promptly, however, the court is entitled to dismiss the complaint for failure to prosecute, and that dismissal will be conclusive. See Fed. R. Civ. P. 41(b). A plaintiff cannot avoid all required fees, but brief delay in payment is not a fatal misstep.

*Farzana K.*, 473 F.3d at 707. Capping off that reasoning, the court observed, "the Supreme Court held that a complaint (actually) filed in the wrong court generally satisfies a federal statute of limitations, provided that suit is re-filed in the right court promptly after the misadventure in the wrong forum ends." *Id.* at 708 (citing *Burnett v. New York Central R.R.*, 380 U.S. 424 (1965); *Herb v. Pitcairn*, 325 U.S. 77 (1945)). A delay in fee payment in the right court, the Seventh Circuit suggested, should not be treated with greater formalism.

Of course, a disagreement among circuits by itself does not justify a departure from circuit law. A second reason *Truitt* does not govern is that the practice in this district has changed since *Truitt* was decided. In 1997 when Truitt's complaint was dismissed, complaints lodged with the Clerk were held and not formally filed until a filing fee was paid or a pauper petition was granted. At that time, a docket number was assigned and a file was opened. That explains the phrasing of the court of appeals's holding that a district court may "*deem* a complaint 'filed' only when IFP status is granted or the appropriate filing fee is paid." *Truitt*, 148 F.3d at 648 (emphasis added). That choice of language also reflects the reality that under 28 U.S.C. § 1914, Congress allowed district courts flexibility in administering the mechanics of receiving complaints, collecting fees, and starting cases. In *Jarrett v. US Sprint Communications Co.*, the Tenth Circuit approved a local practice similar to the former practice in this district. However, it eschewed an "absolute rule," "leav[ing] the matter to each district court, within the bounds of § 1914." 22 F.3d at 259 (stating that "[i]f the District of Kansas does not formally file a complaint until the filing fee is paid, such

action does not violate the statutory provision and is notice to a plaintiff that the filing fee requirement is enforced.").

> *Truitt* was decided before the advent of electronic filing, and the practice in this district has changed as a result that new technology. Now, complaints may be filed over the Internet, as was done in this case, and Rule 5 has been amended to reflect that practice. Rule 5(d)(3) states:

> A court may, by local rule, allow papers to be filed, signed, or verified by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States. . . . A paper filed electronically in compliance with a local rule is a written paper for purposes of these rules.

Fed. R. Civ. P. 5(d)(3). Rule 6(a) of the Electronic Filing Policies and Procedures outlines the present practice:

> **R6 Filing - Initiating Papers**
> (a) The filing of civil initiating papers, issuance and service of the summons, and payment of initial filing fees may be done electronically until July 31, 2008, and must be done electronically beginning August 1, 2008. A case is not considered filed until an initiating paper has been uploaded and a judicial officer has been assigned to the case.

The filing fee can be paid routinely up to seven days after "filing." If it is not paid within this time frame, the assigned judge is contacted, but the case remains "filed" until it is dismissed by a judge.

The complaint in this case was uploaded and the undersigned was assigned to the matter on July 29, 2009. That is when the case was "filed" under local practice, and that filing commenced the action under Federal Rule of Civil Procedure 3. No filing fee was paid then, so the next day a notice was sent to the plaintiff's lawyer to see that it was paid within seven days. The fee was not paid until August 12, 2009, and summonses were issued the next day. The fee payment was tardy, and the plaintiff's attorney was careless. Had further delay ensued, the Court would have issued a

show cause order and dismissed the case for failure to prosecute absent a satisfactory explanation. However, the non-payment of the fee did not upset the "filed" status of the complaint.

The Court concludes, therefore, that this case was commenced within the meaning of Rule 3 on July 29, 2009.

### 4. Equitable tolling

For counting purposes, the Court "exclude[s] the day of the event that triggers [the] period." Fed. R. Civ. P. 6(a)(1)(A). The complaint was filed, therefore, within three years of the false arrest claim and three days short of that for the false imprisonment claim under section 1983. The plaintiff's federal causes of action are not time-barred. The state law claims of assault and battery, false imprisonment, and false arrest carry two-year statutes of limitations, and those claims are tardy. The plaintiff argues that she should receive the benefit of equitable tolling on those claims. That doctrine applies to the statute of limitations defense and may excuse a late filing. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). But its application here would not be appropriate.

In order to benefit from equitable tolling, the plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 457 (6th Cir. 2009). We consider the following factors in this circuit when deciding whether to apply equitable tolling in a given case: "(1) lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Chavez v. Carranza*, 559 F.3d 486, 492 (6th Cir. 2009) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

The plaintiff has made no showing on factors 1, 2, or 5; and he has not rebutted the defendants' argument that the delay prejudiced their ability to gather information about the incident. The third factor — diligence — weighs decidedly against the plaintiff. He and his attorney have been late with respect to nearly every significant procedural event in this case. And counsel's excuses refer to developments that occurred after the deadlines had passed. As the Seventh Circuit bluntly observed:

> Waiting until the last hours is not diligent; the errors that often accompany hurried action do not enable the bungling lawyer to grant himself extra time. . . . Nothing prevented plaintiff's lawyer from acting a day or a week earlier, so that counsel could recover from any gaffe. If counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not the continuation of litigation against an adversary who played no role in the error.

*Farzana K.*, 473 F.3d at 705-06 (citation omitted).

The plaintiff is not entitled to equitable tolling. The state claims of assault and battery, false imprisonment, and false arrest will be dismissed as time-barred.

B.

The defendants also argue that dismissal is required by rule 4(m), which states:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). There appears to be no dispute that none of the defendants were served until December 9, 2009, which is more than 120 days "after the complaint [was] filed."

The Sixth Circuit has emphasized the mandatory nature of the dismissal language in Rule 4(m). *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1053 (3d ed.) (describing

dismissal "as a method of sanctioning a plaintiff's failure to make service on the defendant within 120 days after filing the complaint with the court"). The plaintiff contends that good cause exists to extend the summonses. He points to the parade of unfortunate events that overtook his lawyer beginning on October 14, 2009 when she became ill.

"Establishing good cause is the responsibility of the party opposing the motion to dismiss — here, the plaintiff[] — and 'necessitates a demonstration of why service was not made within the time constraints.'" *Nafziger*, 467 F.3d at 521 (quoting *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994)). Surely, an illness and an office burglary that disables computer equipment can cause a temporary but significant setback in one's law practice and amount to a justification for missing deadlines. Absent from the picture, however, is any explanation why service was not made promptly on the defendants after the case was filed. Rule 4(m) allows 120 days to complete service, probably in contemplation of the fact that some defendants are hard to locate and serve. But that cannot be true here. The identified defendants are Oakland County, its sheriff, and the City of Pontiac. There is no evidence here that any of them either could or did run or hide. And there is no evidence that the plaintiff made any effort to identify the Jon Doe defendants. Nor did the plaintiff seek an extension of time by motion to serve the summonses either before or after they expired.

"To demonstrate good cause, other courts have held that a plaintiff may also show he/she made a reasonable and diligent effort to effect service." *Habib*, 15 F.3d at 74 (citing *Electrical Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 312 (9th Cir. 1992). "The legislative history to the Fed. R. Civ. P. 4 amendments of 1983 also refers to 'diligence' and 'reasonable efforts to effect service.'" *Ibid.* (quoting *Boykin v. Commerce Union Bank of Union City, Tennessee*, 109

F.R.D. 344, 348 (W.D. Tenn. 1986)). In this case, the plaintiff has shown neither. Good cause to extend the life of the summons has not been demonstrated.

However, "courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (quoting Advisory Committee Notes on 1993 amendments to Fed. R. Civ. P. 4). The *Henderson* court did not elaborate on when courts should exercise their discretion to extend this period, outside of service on officers of the United States when the government itself had already been served. *Ibid.* In *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322 (E.D. Mich. 2001), the court discussed several factors, relying on *Wise v. Dep't of Defense*, 196 F.R.D. 52 (S.D. Ohio 1999), which in turn quoted language from the Advisory Committee stating that "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action. . . ." *Wise*, 196 F.R.D. at 55 (quoting Advisory Committee Notes on Fed. R. Civ. P. 4(m)). The factors are (1) the length of additional time required to perfect service; (2) prejudice to the defendant resulting from delay; (3) whether the defendant had actual notice of the suit; (4) whether a dismissal without prejudice nonetheless would substantially prejudice the plaintiff because the case would be time-barred; and (5) whether the plaintiff made a good faith effort to serve the defendant within the time allowed. *See Slenzka*, 204 F.R.D. at 326.

In this case, the first factor favors an extension, since service on the named defendants was made within a few days of the summons expiration deadline. The fourth factor favors the plaintiff as well. A dismissal without prejudice under Rule 4(m) here would equate to a case-termination sanction because there is no time left on the statute of limitations. The other factors favor the defendants or are neutral. The defendants had no notice of the case before receiving the complaint

in December 2009, but they have not shown that they are prejudiced by the few days beyond the deadline that elapsed before service was made. There is no evidence fo any effort to serve the defendants while the summonses were still alive.

On balance, however, the Court believes a short extension is in order. As noted, a dismissal for tardy service would effect a harsh result. "Because courts favor trials on the merits, . . . special care is taken to make certain that a party with a meritorious [claim] is not deprived of an adjudication because of counsel's failure to [act] timely . . . . Without an inquiry into the merits . . ., the court would run the risk of cutting short an action that in all justice should be permitted to proceed in the absence of flagrantly egregious conduct by counsel." *Buck v. U.S. Dept. of Agriculture, Farmers Home Admin.*, 960 F.2d 603, 607 (6th Cir 1992). Although plaintiff's counsel may be undeserving, her client should not bear the brunt of her inattention. The Court, therefore, will extend the summonses to Oakland County, Sheriff Bouchard, and the City of Pontiac.

### C. The pseudonymous defendants

The same latitude will not be permitted as to the John Doe defendants, consisting of an Oakland County deputy sheriff and a Pontiac police officer. Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all the parties" in the complaint. Fed. R. Civ. P. 10(a); *cf. Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (discussing this requirement in the context of a plaintiff's attempt to proceed anonymously). "In general, the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001); *see also Burnett v. Marschke*, No. 09-00225, 2010 WL 502712, at *3 (W.D. Mich. Feb. 5, 2010) (noting that "[t]he use of the fictitious names of Jane and John Doe is permitted only in limited circumstances" and determining from the case law that such circumstances require "at least one named party and

discovery from that party [that] may eventually allow the true identity of the Jane or John Doe to be discovered"). Sometimes pseudonymous defendants cannot be named until a plaintiff has time to discover their identities and amend the complaint. However, in the three pre-suit years and the additional year this case has been pending, the plaintiff has yet to attempt to discover the identities of, name, or serve the officers.

Rule 4(m) applies equally to the pseudonymous defendants. *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345-46 (6th Cir. 2007). There has been no justification offered for the failure to name and serve the John Does in this case. Perhaps word has filtered back through the respective departments that this case was filed, as was the case in *Petty*. However, here, just as there, the "constructive-notice argument makes sense only if, at some point, [the plaintiff] actually substitutes the names of real persons for his John Doe defendants." *Ibid.* That has not happened, and the John Doe defendants will be dismissed without prejudice under Rule 4(m).

### D.

Finally, the Pontiac defendants reason that if the John Doe defendants are dismissed, the case against the municipality must fall as well because under Rule 19 the officers are necessary parties. They reason that because the municipality's liability depends on the officer's conduct, the failure to join and retain the officers is fatal to the case. That reasoning does not reflect current law.

Under Rule 19, a person must be joined as a party if "in that person's absence, the court cannot accord complete relief among existing parties," or the "person claims an interest relating to the subject of the action" but may not be able to protect that interest or might be subjected to inconsistent legal obligations unless he or she is joined in the case. Fed. R. Civ. P. 19(a)(1)(A)&(B). The Pontiac defendants have not explained how the John Doe defendants fit those criteria. The

City's liability is independent of that of the individual officer, in that the plaintiff must show that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996) ("Under *Monell*, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . leads to, causes, or results in the deprivation of a constitutionally protected right."). It is well established that "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 683, 687 (6th Cir. 2001); *see also Kinkus v. Vill. of Yorkville, Ohio*, 289 F. App'x 86, 93 (6th Cir. 2008) (dismissing municipal liability claim because conduct of individual officers did not violate plaintiff's rights under the First Amendment); *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (dismissing municipal liability claim because conduct of individual officers did not violate plaintiffs' right under Fourth Amendment to be free from unreasonable seizure); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that "neither *Monell* [], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). However, there has been no adjudication with respect to the conduct of the John Doe defendants, and their absence from the roll of parties does not prevent the plaintiff from taking evidence of their conduct in order to establish an official, unconstitutional policy by the City.

The Court does not believe that the pseudonymous defendants are necessary parties.

III.

The Court concludes that the federal causes of action stated in the complaint are not time-barred, several state law causes of action are barred by the statutes of limitations, the plaintiff is not entitled to equitable tolling, the proper exercise of discretion favors extending the summons on the named defendants but not the pseudonymous defendants, and the pseudonymous defendants are not necessary parties to the action.

Accordingly, it is **ORDERED** that the motion to dismiss by defendants Oakland County, Michael Bouchard, and John Doe Oakland County Sheriff Deputy [dkt #8] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the motion to dismiss or for summary judgment by defendants City of Pontiac and John Doe Pontiac Police Officer [dkt #10] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the plaintiff's claims for assault and battery (count V), false imprisonment (count IV), and false arrest (count III) are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the complaint is **DISMISSED** in its entirety **WITHOUT PREJUDICE** as to defendants John Doe Oakland County Sheriff Deputy and John Doe Pontiac Police Officer, **ONLY**.

It is further **ORDERED** that the remaining defendant must file their answers to the complaint **on or before September 20, 2010**.

It is further **ORDERED** that counsel for the parties shall appear for a scheduling conference on **September 29, 2010 at 3:30 p.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 30, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 30, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO